UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-757-H

A & W RESTAURANTS, INC.                                                                  PLAINTIFF

V.

COOK CORPORATION, INC.
RAY F. COOK
KATHLEEN COOK                                                                            DEFENDANTS

**MEMORANDUM OPINION**

Defendants in this contract and trademark infringement case are the Cook Corporation, Inc. (the "Cook Corporation") and Ray and Kathleen Cook (the "Cooks") (sometimes referenced collectively as the "Defendants"). The Cook Corporation operated an A&W franchise in Idaho Falls, Idaho, under a License Agreement with A&W Restaurants, Inc. ("A&W") dated January 3, 1994 (the "License Agreement"). Recently, the parties disagreed about their respective obligations and performances under the License Agreement. A&W terminated that agreement on May 5, 2005, and soon afterwards filed this lawsuit to recover about $89,000 in royalty and advertising fees due under it. A&W also sought judgment against the Cooks based upon their execution of a Guaranty Agreement dated January 3, 1994. Defendants have now moved to dismiss the case or, in the alternative, to change the venue for the convenience of the parties to the District of Idaho pursuant to 28 U.S.C. § 1404(a). The motion raises interesting questions of contract interpretation, jurisdiction and venue. After having reviewed the memoranda and discussed the arguments with counsel, the Court concludes that venue in Kentucky is improper.

None of Defendants has meaningful contact with the state of Kentucky.[1] The Cooks are Idaho residents. The Cook Corporation is an Idaho corporation, operating exclusively there. Defendants appear to have had very little contact with the state of Kentucky. A&W is a Michigan corporation that now has its principal place of business in Kentucky. A&W's claims against Defendants are based upon the License and Guaranty Agreements. The Court has no reason to doubt that these agreements were the product of arm's length commercial transactions among the parties.

The License Agreement is between A&W and the Cook Corporation. It contained 24 pages, plus exhibits, comprehensively describing the business relationship of the parties, including the use of trademarks and other intellectual property. Pertinent provisions concerning choice of law and forum selection are contained in an Addendum to the License Agreement executed on the same date. Those provisions state:

> 26. This Agreement and the validity and performance hereof shall be governed by the laws of the State of Michigan and this Agreement shall be construed under those laws as if the Restaurant operated hereunder is located in the State of Michigan. The parties agree that any action brought by either party against the other in any court, whether federal or state, shall be brought exclusively within the State of Michigan in the judicial circuit or district in which A&W Restaurants, Inc. has it principal place of business, and the parties do hereby waive all questions of personal jurisdiction or venue for the purposes of carrying out this provision. The parties agree this forum is the most convenient forum for both jurisdiction and venue. The parties agree that this is a mutually convenient forum for any trial concerning disputes under this Agreement. It is mandatory that this forum be exclusively used for all disputes and no other forum may be used.

---

[1] Originally, Defendants negotiated and perhaps signed the License Agreement with A&W in Michigan. After A&W moved to Kentucky, Defendants may have forwarded payments and made phone calls to Kentucky.

This provision, therefore, purports to invoke the state of Michigan for choice of law, jurisdiction, venue and convenience of the parties. It does not invoke either jurisdiction or venue in Kentucky. That A&W subsequently moved its offices to Kentucky does not alone act as an amendment of the License Agreement to permit Defendants' waiver of venue or jurisdiction here. The Cooks were not parties to the License Agreement, but did sign a short guarantee performance of the Cook Corporation's obligations.

The Cooks did execute a separate Guaranty Agreement in which each personally agrees to liability for certain obligations and debts of the Cook Corporation. The first paragraph of the agreements defines the guaranteed obligations as follows:

> [A]ll of Obligor's present and future indebtedness or obligations to A&W, whether direct or indirect, absolute or contingent, primary or secondary, joint or several, and all renewals and extensions thereof, based upon any indebtedness or obligations arising by any terms, covenants or conditions of any promissory notes, mortgages, deeds of trusts, security agreements, or other evidences of indebtedness between A&W and the Obligor, including, without limitation, any representations, warranties and indemnities contained in such promissory notes, mortgages, deeds of trusts, security agreements, or other evidences of indebtedness (collectively the "Guaranteed Obligations").

The Guaranty Agreement also contains a choice of law and forum selection provisions. Those provisions state:

> This Indebtedness Guaranty is executed in and shall be governed in accordance with the laws of the Commonwealth of Kentucky as to interpretation, validity, performance and enforcement. Should any action at law or in equity be brought by Payee to secure or protect its rights under this Agreement, such action shall be brought in the United States District Court for the Western District of Kentucky, or, if said court does not have subject matter jurisdiction, then such action shall be brought in the appropriate state court in the City of Louisville and County of Jefferson, Kentucky.

> The consent to suit in the State of Kentucky set forth herein shall be solely for the purpose of allowing A&W to enforce its obligations hereunder, and shall not be interpreted or construed as or deemed a consent by Guarantor to suit in any of the aforesaid courts on any other matter, dispute or claim, including without limitation any dispute under any Franchise Agreement between A&W and Obligor. The failure by Guarantor to appear in any suit brought in the State of Kentucky by Guarantor shall not prevent Guarantor, under the theory of res judicata, collateral, estoppel or otherwise, from asserting any defenses, counterclaims, claims or right of set-off Guarantor may have against A&W in any subsequent suit, except with respect to the Guarantor's obligations hereunder, for which any judgment shall be conclusive.

These provisions purport to establish choice of law and venue, "solely for the purpose" of A&W enforcing its rights under the Guaranty Agreement. The Cook Corporation did not execute this agreement. A&W contends that the Guaranty Agreement forum selection clause is reasonable and that this Court should enforce its venue and jurisdictional provisions.

Defendants have moved to transfer to the District of Idaho for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). In these circumstances the burden is on A&W to show that the current venue is proper. *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974).[2] Virtually the entire burden of A&W's case for venue in Kentucky is premised upon the Guaranty Agreement in which the Cooks agreed that any suit to enforce its provisions must be brought in the federal court in the Western District of Kentucky. As a general rule, courts will enforce forum selection clauses and commercial contracts freely entered into an arm's length negotiation and "unaffected by fraud, undue influence, or overweening bargaining power." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972). Under this standard and under Kentucky contract

---

[2] A&W could meet their burden by showing an agreement as to venue or by showing substantial contacts and convenience of the parties.

4

law, there appears little question that the choice of law and forum selection provisions in both the License Agreement and the Guaranty Agreement are contractually enforceable.

The requirement that a court have personal jurisdiction over a party is a waivable right. *Preferred Capital, Inc. v. Associates in Urology, Inc.*, 453 F.3d 718, 721 (6th Cir. 2006). It is well-established that a party, voluntarily agreeing to a particular forum, submits himself to the personal jurisdiction of that forum. *Id.*; *Angstrom Technologies, Inc. v. Wray*, 382 F.Supp.2d 895, 897 (E.D. Ky. 2005). The only reason for voiding a valid forum selection clause is where the agreed upon venue is fundamentally unfair to Defendants. *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991). That is not the case here.

Two contractual issues stand in the way of this Court accepting jurisdiction and venue here. First, the Cook Corporation agreed to venue and jurisdiction in Michigan. However, it did not execute the Guaranty Agreement which contains the Kentucky forum clause. Therefore, the Court can find no basis for the Cook Corporation's consent to venue or jurisdiction in Kentucky. Without such consent, venue and jurisdiction depend upon a careful analysis of due process principles and 28 U.S.C. § 1404(a). A&W did not make these arguments and it seems quite unlikely that such agreements could succeed.[3]

Second, the Cooks' consent to venue and jurisdiction in the Guaranty Agreement is circumscribed, perhaps totally for our purposes. Although A&W unquestioningly asserts that the Guaranty Agreement secures the promises made in the License Agreement, this Court can find no such reference. Indeed, the Guaranty Agreement never actually references the License

---

[3] While it is true that the minimum contacts or jurisdiction was not directly before the Court, the convenience of the parties was at issue. A&W has cited no arguments to counter the obvious inconvenience for the Cooks to defend a claim brought in Kentucky.

Agreement. It defines the "Guaranteed Obligations" as limited to notes, deeds, security agreements or other financial instruments. Thus, the definition itself does not seem broad enough to include the License Agreement. Moreover, the Guaranty Agreement specifically excludes consent to a Kentucky forum for "any dispute under any Franchise Agreement between A&W and Obligor [the Corporation]."[4] From the Court's reading of the entire document, therefore, the circumscribed definition and the exclusion seem absolutely consistent. This result means that the Cooks have not consented to a Kentucky forum as to claims in this lawsuit.

To be sure, the Cooks also signed as guarantors of the Cook Corporation's performance under the License Agreement. However, it is not at all certain that by doing so the Cooks also consented to the agreement's forum selection provisions. Even if they did so, those provisions provide for a forum in Michigan rather than in Kentucky. Therefore, the Court is left with the conclusion that (1) the Cook Corporation has never consented to suit in Kentucky and (2) the Cooks have not consented to suit in Kentucky for any obligations under the License Agreement, which would include their intellectual property obligations and their licensing payment obligations in this lawsuit. Neither the License Agreement nor Guaranty Agreement can support jurisdiction or venue in Kentucky for the claims asserted in this case. No other grounds for venue in Kentucky appear viable.

---

[4] The Court must assume that the term "Franchise Agreement" is the same as a "License Agreement" since the latter term is not otherwise defined.

6

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record